[No. E021915. Fourth Dist., Div. Two. May 20, 1999.]

DAVID ROBERT JOHNSON, Plaintiff and Appellant, v.
GARY STANHISER, Defendant and Respondent.

**COUNSEL**

Girardi and Keese, Thomas V. Girardi and James B. Kropff for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

**OPINION**

**HOLLENHORST, Acting P. J.**—Plaintiff, David Robert Johnson, appeals from the judgment made by the trial court following an entry of default against defendant Gary Stanhiser. The trial court found that plaintiff had failed to produce sufficient evidence to prove actual damages at a default prove-up hearing.

### PROCEDURAL BACKGROUND AND FACTS

On July 31, 1996, plaintiff initiated this action against Gary Stanhiser (herein Stanhiser) alleging breach of contract, accounting, breach of fiduciary duty, fraud, conversion, and negligence. According to the complaint, Stanhiser undertook to manage plaintiff's assets and investments. However, after gaining control of several millions of dollars of plaintiff's assets, Stanhiser refused to account for or provide plaintiff with the profits or information on the status of any investments.

Having failed to answer the complaint, Stanhiser's default was taken on January 22, 1997. On July 25, 1997, the trial court conducted a prove-up hearing and heard the testimony of plaintiff and his counsel. The court decided to take the matter under submission and allowed plaintiff to file a supplemental statement under oath to further illustrate the wide array of damages that he had suffered at the hands of Stanhiser.

Plaintiff submitted his supplemental statement on September 9, 1997, which laid out in detail each transaction that occurred between himself and

Stanhiser. According to plaintiff, a retired orthopedic surgeon, Stanhiser befriended him in order to gain his trust. Once Stanhiser obtained plaintiff's trust, Stanhiser obtained control of plaintiff's money or interest in stocks and warrants under the pretense that he would be investing such assets. However, plaintiff complains that Stanhiser converted such assets for his own use without compensating plaintiff. For example, plaintiff complains that Stanhiser sold all of plaintiff's interest in a company called Miramar Mining Corporation for a net gain of $2,040,000 and kept the gains, without plaintiff's approval, for himself. He also asserts that Stanhiser induced him to invest $1,130,000 into a brokerage house account in Canada called "Cannacord," but has refused to tell him what has happened to the investment or return any of the funds, despite plaintiff's demands. Plaintiff further claims that he was deceived into assigning his interest in Polaris Industrial Enterprises, Inc., stock ($60,000) to Stanhiser for the purpose of providing Stanhiser with money to make a payment on his house. However, plaintiff failed to get Stanhiser to sign a promissory note acknowledging the loan and Stanhiser has refused to repay the loan amount. Finally, plaintiff complains that Stanhiser converted plaintiff's interest in real properties located in San Diego, Redlands, and Corona in the amount of $1,250,000.

On November 7, 1997, the trial court issued its ruling finding that plaintiff had failed to produce sufficient evidence "to prove by a preponderance of the evidence that there were actual damages incurred," and thus refused to award plaintiff any damages. In support of its ruling, the trial court found the evidence showed the following: (1) Plaintiff transferred the stocks and warrants in Miramar Mining Company to Stanhiser "for consideration had and received and, therefore, the written agreement shows that the plaintiff would not be entitled to recover the losses." (2) Plaintiff met with Stanhiser in an attorney's office in Canada and decided that whatever their business relationship was going to be, it would not be in writing and that plaintiff's name would not appear on any accounts; however plaintiff would participate in whatever profits may arise from any funds provided to Stanhiser for investment. The only evidence produced by plaintiff shows that he would write checks to defendant for legal services and/or other fees as they may somehow relate to the investment arrangement between the two of them. There was no evidence that the investments yielded any profits. (3) Regarding the Polaris Industries Enterprise stock, the documentary evidence shows that plaintiff signed documentation acknowledging that he had received full value for the transaction delivering the stock to defendant such that there was nothing to indicate that he was obligated to return any money from the sale of the stock to plaintiff. (4) Finally, the documentation regarding the real estate transactions indicates that Stanhiser acted as plaintiff's agent and that plaintiff was to participate in the profits, if any. However, there was no

evidence of any positive cash flow and plaintiff was obligated to pay per his signed contract. Although plaintiff was not awarded any damages, the trial court did award plaintiff his costs and fees.

## STANDARD OF REVIEW

We have been unable to find any case which provides us with the standard of review applicable when a plaintiff appeals from his or her award of damages after defendant defaulted. Instead, most of the cases involve the defendant appealing from the judgment on the grounds that the damages awarded were excessive. In such cases, appellate courts have been only too willing to review the evidence to determine its sufficiency to support the damage award. ■ As the court in *Uva* v. *Evans* (1978) 83 Cal.App.3d 356, 363-364 [147 Cal.Rptr. 795], stated: "The power of an appellate court to review the trier of fact's determination of damages is severely circumscribed. An appellate court may interfere with that determination only where the sum awarded is so disproportionate to the evidence as to suggest that the verdict was the result of passion, prejudice or corruption [citations] or where the award is so out of proportion to the evidence that it shocks the conscience of the appellate court. [Citations.] A rule precluding review of damages on appeal from a default judgment would consequently protect the award precisely in those cases in which review is most necessary—that is, where the damages awarded are totally unconscionable and without evidentiary justification." Although the trial court failed to award plaintiff any damages other than his costs and fees, we find that this case presents just the set of circumstances where the award, or lack thereof, is totally unconscionable and without justification, thus begging for our review.

## DISCUSSION

Plaintiff challenges the trial court's finding that he had failed to provide sufficient evidence to support a damages award. He contends that the evidence was more than sufficient to establish a prima facie case for damages. We agree.

### A. *Standard of Proof.*

■ After considering the evidence presented, the trial court erroneously applied a preponderance of the evidence standard in determining whether plaintiff was entitled to an award of damages. The correct standard of proof requires that the plaintiff merely establish a prima facie case. "Generally speaking, the party who makes default thereby confesses the material allegations of the complaint. [Citation.] It is also true that *where a cause of*

*action is stated* in the complaint and evidence is introduced to establish a prima facie case the trial court may not disregard the same, but must hear the evidence offered by the plaintiff and must render judgment in his favor for such sum, not exceeding the amount stated in the complaint, or for such relief, not exceeding that demanded in the complaint, as appears from the evidence to be just. [Citations.]" *(Taliaferro* v. *Davis* (1963) 216 Cal.App.2d 398, 408-409 [31 Cal.Rptr. 164], original italics.) With the correct standard in mind, we look at the evidence to determine whether plaintiff established a prima facie case.

## B. *The Evidence.*

In addition to his testimony at the prove-up hearing, plaintiff submitted a supplemental statement under oath detailing his personal and business relationship with Stanhiser. Included with the statement was a number of exhibits, such as documents concerning the amount of shares and warrants of Miramar Mining Company he had owned, treasury orders, investment transaction reports, canceled checks, and correspondence. Having reviewed the evidence presented to the trial court, we find the following:

### 1. *Agreement to Manage/Invest Plaintiff's Assets*

According to plaintiff, he entered into an oral agreement with Stanhiser wherein plaintiff would pay Stanhiser $3,000 per month in consideration of Stanhiser managing plaintiff's money. Plaintiff submitted copies of several canceled checks to evidence his payments to Stanhiser. We also note that this oral agreement was referenced in the assignment agreements between plaintiff and Stanhiser wherein plaintiff assigned his shares of stock in Miramar Mining Company and Polaris Industrial Enterprises, Inc., to Stanhiser. Such oral agreement served as the consideration for the assignments and supports plaintiff's claim that he entered into the assignments and transferred his assets to Stanhiser because he had agreed to allow Stanhiser to invest and manage such assets.

### 2. *Miramar Mining Company*

Prior to Stanhiser's managing his investments, plaintiff owned 135,000 shares of stock and 3 warrants in the Miramar Mining Company entitling him to purchase up to 116,000 shares of stock per warrant. Plaintiff executed an assignment agreement wherein he assigned his rights and interests in the stocks and warrants to Stanhiser. Subsequently, the warrants were converted from Canadian dollars to United States dollars. Despite the assignment agreement between plaintiff and Stanhiser, plaintiff testified that he never

intended to give Stanhiser the Miramar stocks and warrants as a gift. Although Stanhiser had the right to sell the Miramar stocks and warrants according to the assignment agreement, it was plaintiff's understanding that Stanhiser would be reinvesting the proceeds on plaintiff's behalf pursuant to their oral agreement which served as consideration for the assignment. Despite plaintiff's demands, he never received any information or evidence that the proceeds were reinvested, nor did plaintiff ever receive any of the proceeds.

### 3. *Cannacord Brokerage House*

About the same time that plaintiff thought Stanhiser was managing his Miramar stock, Stanhiser took plaintiff to Vancouver and introduced him to Stanhiser's attorney, Steve Dadson. The purpose of the trip was to convince plaintiff that he should invest cash in the Cannacord brokerage house because it "would be properly supervised, managed and would appreciate in value." Plaintiff was convinced and invested approximately $1,130,000 in cash. In response to plaintiff's inquiries regarding the status of his Cannacord investments, Stanhiser indicated that the investments were going "very well." Despite demands to the contrary, plaintiff never received any money from the brokerage account nor was he advised by Stanhiser as to what happened to the money in the account.

### 4. *The Polaris Industrial Enterprises, Inc., Stock*

Documentary evidence showed that on or about March 8, 1993, plaintiff assigned his interest in 150,000 shares of stock in Polaris Industrial Enterprises, Inc., in consideration of a separate agreement. According to plaintiff, Stanhiser had asked for a loan of $50,000 to make a payment on his house. Although plaintiff did not have the cash, he offered to give Stanhiser the Polaris stock as a loan. On May 20, 1993, plaintiff signed an agreement to sell the stock to Bill Tice for the amount of $60,000 which plaintiff used. The fact that Stanhiser had plaintiff execute the agreement to sell the stock after he had executed an assignment of the same stock to Stanhiser, coupled with the fact that Stanhiser wrote "Received $60,000.00 for [plaintiff] [¶] 5-21-93," supports plaintiff's explanation of how Stanhiser obtained the Polaris stock, i.e., because plaintiff was loaning him the value of the assets so that he could make his house payment.

### 5. *Real Estate Ventures*

The evidence shows that plaintiff held an ownership interest in real property in San Diego called the "Palisades" which was being foreclosed

upon. Upon Stanhiser's advice, plaintiff made a "like-kind" exchange of the Palisades property in order to secure a 50 percent interest in an apartment building in Rialto called "Carefree." To finalize the transaction, plaintiff paid $150,000 in cash and gave three lots valued at $150,000 each for a total sum of $600,000 for the Carefree property. Plaintiff held this interest in the Carefree property for approximately two years. Thereafter, Stanhiser advised plaintiff to make another "like-kind" exchange of the Carefree property for a property in Redlands. However, this time plaintiff's name did not appear on any title documents for the Redlands property. The Redlands property was eventually foreclosed upon. Thus, as a result of these various real estate ventures plaintiff suffered a substantial loss, including his prior interest in the Palisades property and the $600,000 he had invested in the Carefree property.

### 6. *Corona Medical Property*

According to the evidence, Stanhiser obtained a loan of $425,000 secured by plaintiff's Main Street Corona Medical Center property from Adobe Oil Company president, Russell Singer. However, plaintiff was unaware of Stanhiser's actions and never authorized such actions. Nonetheless, by March 1995, plaintiff became aware of the loan when he received a letter demanding repayment. Upon asking Stanhiser why he had encumbered the property, plaintiff was told that Stanhiser wanted more money to make investments. Stanhiser told plaintiff not to worry because he (Stanhiser) would pay back the loan. Despite Stanhiser's assurances, plaintiff had to pay back the entire loan amount plus all hard-money expenses, fees, and interest in order to keep the property.

██ Based on the above, we find that the evidence does establish a prima facie case that plaintiff was damaged by the actions of Stanhiser. For example, Stanhiser entered into an oral agreement to manage plaintiff's funds which he breached by failing to do anything other than gain control of plaintiff's assets and convert them to his own use. This same oral agreement served as consideration for the assignments which plaintiff entered into wherein he assigned his interests in Miramar and Polaris stock to Stanhiser. Also, Stanhiser fraudulently obtained control of plaintiff's assets by convincing plaintiff to trust him to manage his assets. Whenever plaintiff inquired as to how his investments were coming along, Stanhiser continually assured him that everything was going well. But for Stanhiser's representations and deceit, plaintiff would never have relinquished control of his assets to Stanhiser.

Despite the above showing, the trial court failed to award plaintiff any damages. However, we conclude that substantial evidence exists to support

the claim for damages. Plaintiff's burden was to establish a prima facie showing that he was damaged by Stanhiser's actions. He did so. An award of $0 damages compels reversal and remand for a new hearing on the issue of damages.

## DISPOSITION

That portion of the judgment ordering that plaintiff shall recover nothing in damages is reversed with directions that the trial court rehear and reconsider the issue of damages in light of the views expressed in this opinion. In all other respects the judgment is affirmed. Plaintiff is to recover his costs on appeal.

Richli J., and Ward J., concurred.