Filed 3/26/13  Seo In v. Lucky Kim International CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SEO IN CORPORATION, | B242837 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC477840) |
| v. | |
| LUCKY KIM INTERNATIONAL, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly E. Kendig, Judge.  Vacated and remanded.

Jeong & Likens, Chan Yong Jeong and Brennan J. Mitch for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

Seo In Corporation (appellant) appeals from an order of the superior court dismissing its case against husband and wife, Kyu Bong Kim (Mr. Kim) and Hyo Sook Kim (Mrs. Kim), and two companies owned by the Kims, HQ Textile, Inc. (HQ), and Lucky Kim International (Lucky) (collectively respondents). Appellant contends that the court erred in finding that its action was based on the same facts as those in a prior federal case and thus was an improper attempt to secure a duplicate judgment. We agree, vacate the order of dismissal, and remand for the superior court to conduct a prove-up hearing. At that hearing, the court must determine whether appellant has established a prima facie case and, if so, enter judgment in its favor.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. and Mrs. Kim jointly own Lucky and HQ, companies that import and sell fabric. Lucky purchased fabric from appellant in 2009, but failed to pay appellant. Instead, respondents filed suit against appellant in federal court on October 16, 2009, alleging intentional interference with contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and injunctive relief. Appellant counterclaimed for breach of contract, based on Lucky's failure to pay the 2009 invoice.

In September 2011, the federal court ordered that respondents take nothing on their claims for intentional interference with contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and injunctive relief. The court entered judgment in favor of appellant on its breach of contract claim for the principal amount of $111,301.83 and prejudgment interest of $23,179.88, for a total of $134,481.71. Respondents have not satisfied

2

the judgment. Appellant asserts that Mr. and Mrs. Kim have sought to evade the judgment by moving Lucky's assets to HQ.

On January 26, 2012, appellant filed a complaint in superior court against respondents alleging that Lucky fraudulently transferred assets in order to evade judgment. Appellant sought to void the fraudulent transfers, impose a constructive trust, and secure an accounting. Appellants claimed $134,481.71 in damages, $20,000 for pain and suffering, and $150,000 in punitive damages. Respondents did not file an answer, and the clerk entered their default on March 27, 2012.

On June 14, 2012, appellant requested entry of a default judgment. In its Case Summary in Support of Default Judgment, appellant argued that Lucky made fraudulent transfers of assets to avoid its obligations within the meaning of Civil Code section 3439.04 of the Uniform Fraudulent Transfer Act (UFTA). Appellant argued that respondents had filed the federal lawsuit to delay the payment it owed appellant and that, throughout the federal litigation, respondents transferred assets away from Lucky in order to avoid its obligation to appellant. Appellant contended that respondents transferred the assets by having Lucky purchase and pay for goods that were then sold by HQ. Appellant argued that, throughout the pendency of respondents' federal lawsuit against appellant, Lucky overpaid vendors for fabric that was then sold by HQ, thus transferring Lucky's assets to HQ.

Appellant submitted a declaration from its president, Young S. Jang. Jang stated that Mrs. Kim had boasted to him that, "even if [appellant] won judgment against Lucky, Lucky would be judgment-proof because [respondents] were simply going to move all assets away from Lucky. [¶] [Respondents'] plan was to make purchases for HQ, another company owned jointly by Mr. and Mrs. Kim, out of Lucky's account, and thereby secretively and fraudulently drain Lucky of all

3

assets.  [¶]  Additionally, in the course of the aforementioned transfers, [respondents] except Lucky have received inventory, accounts receivables, money, and other assets from Lucky, a portion of which is due to [appellant], pursuant to the judgment mentioned above."

Jang asserted that appellant had suffered $20,000 in general damages, stating that appellant's staff had "wasted hundreds of hours investigating and corresponding with [respondents] in attempts to ascertain the status of the payment due, only to discover that for the entire three years [respondents] have in fact been fraudulently transferring wealth to escape responsibility for that same payment."

Appellant's counsel, Chan Yong Jeong, submitted a declaration stating that appellant had been unable to discover Lucky's financial records during the federal lawsuit because of protective orders, but that, after the judgment was entered, appellant obtained Lucky's financial records by serving subpoenas on Lucky's customs broker, factoring service, and banks.  Appellant then discovered that Lucky had been secretly transferring its assets to HQ by "making overpayments in the guise of transactions for purchase of fabrics."  Jeong gave numerous examples of these alleged fraudulent transactions and attached exhibits, including invoices received and payments made by Lucky, to support his statements.[1]

The trial court dismissed the case, reasoning that the prior federal court judgment was based on the same facts between the same parties.  The court thus

---

[1]     For example, Jeong stated, and attached documentation indicating that between October 2009 and April 2011, Lucky paid $885,554.08 to a vendor, Aju Plus Textile, but received invoices and fabric for only $23,427.  During the same period, Lucky paid another vendor, JR Tex Co. Ltd, $405,183.50, while receiving $7,499.85 worth of fabric. In 2010, Lucky transferred $353,159.92 to Tae Hyung Co. Ltd., in exchange for $826.80 in goods.

4

dismissed the action "as an improper attempt to secure a duplicate judgment on the same facts."

## DISCUSSION

Appellant argues that the trial court erred in dismissing its case on the basis that it arose from the same facts as those in the federal lawsuit. We agree.

"The UFTA permits defrauded creditors to reach property in the hands of a transferee. [Citation.] 'A fraudulent conveyance under the UFTA involves "'a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim.'" [Citation.]' [Citation.]" (*Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 840-841 (*Fidelity*).) "A transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . , if the debtor made the transfer . . . as follows: [¶] (1) With actual intent to hinder, delay, or defraud any creditor of the debtor. [¶] (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor . . . [¶] (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." (Civ. Code, § 3439.04, subd. (a).) "Civil Code section 3439.07 sets forth a creditor's remedies under the UFTA, including 'avoidance of a transfer, attachment, and the equitable remedies of injunction and receivership as well as "[a]ny other relief the circumstances may require."' [Citations.]" (*Fidelity*, *supra*, 179 Cal.App.4th at p. 841.)

The record indicates that, in the federal suit, appellant's claim against respondents was a breach of contract claim based on Lucky's failure to pay the 2009 invoice for the fabric that appellant sold to Lucky. By contrast, appellant's

claim in this suit is that respondents fraudulently transferred assets from Lucky within the meaning of the UFTA so as to avoid paying any judgment that might be entered against them in the federal action. That is, the allegations of the complaint and appellant's argument and exhibits in support of the default prove-up indicate that appellant's claim in this case was not based on the same facts as the federal suit, but on Lucky's alleged conduct during the pendency of the federal suit of fraudulently transferring its assets to HQ. The superior court therefore erred in dismissing appellant's case.[2]

Code of Civil Procedure section 585, subdivision (b) states that after a defendant fails to answer the complaint and does not file a demurrer, enumerated motions, or a petition for writ of mandate, the clerk of the court, upon plaintiff's written application, shall enter the default of defendant. A default "'is said to "confess" the material facts alleged by plaintiff, i.e., the defendant's failure to answer has the same effect as an express admission of the matters well pleaded in the complaint.' [Citation.]" (*Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1597.) "The plaintiff thereafter may apply to the court for the relief demanded in the complaint. The court shall hear the evidence offered by the plaintiff, and shall render judgment in the plaintiff's favor for that relief, not exceeding the amount stated in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115, as appears by the evidence to be just." (Code Civ. Proc., § 585, subd. (b).)

---

[2] The trial court mistakenly thought that the federal judgment was entered on appellant's, rather than respondents', claims for intentional interference with contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and injunctive relief. However, appellant's counterclaim on which judgment was entered in its favor was for breach of contract only, based on Lucky's failure to pay the 2009 fabric invoice. All the other claims were brought by respondents against appellant.

"'Generally speaking, the party who makes default thereby confesses the material allegations of the complaint. [Citation.] It is also true that *where a cause of action is stated* in the complaint and evidence is introduced to establish a prima facie case the trial court may not disregard the same, but must hear the evidence offered by the plaintiff and must render judgment in his favor for such sum, not exceeding the amount stated in the complaint, or for such relief, not exceeding that demanded in the complaint, as appears from the evidence to be just. [Citations.]' [Citation.]" (*Johnson v. Stanhiser* (1999) 72 Cal.App.4th 357, 361-362 (*Johnson*).)

A default judgment may be granted by the court at a prove-up hearing upon an evidentiary showing with live testimony or, in the court's discretion, with affidavits or declarations setting forth "with particularity" the facts that are "within the personal knowledge" of the declarant. (Code Civ. Proc., § 585, subd. (d).) In conducting the prove-up hearing, "[t]he correct standard of proof requires that the plaintiff merely establish a prima facie case." (*Johnson*, *supra*, 72 Cal.App.4th at p. 361.) The court has discretion to consider hearsay testimony in a default prove-up because "[h]earsay admitted without objection is evidence that may be considered. [Citations.]" (*City Bank of San Diego v. Ramage* (1968) 266 Cal.App.2d 570, 584; see also *Harbour Vista, LLC v. HSBC Mortgage Services Inc.* (2011) 201 Cal.App.4th 1496, 1516 [stating that the hearsay exception created by Code of Civil Procedure section 585, subdivision (d) for default prove-ups does not apply in quiet title actions].)

Appellant contends that it has submitted prima facie evidence for all its claims and asks this court to enter judgment awarding damages. However, the superior court did not hear the evidence offered by appellant, as required by Code of Civil Procedure section 585, subdivision (b). We therefore remand for the

7

superior court to conduct the prove-up hearing and determine whether appellant has established a prima facie case under the UFTA. (See *Garden Grove etc. School Dist. v. Meier* (1962) 206 Cal.App.2d 570, 574 ["[I]n a case where no findings are made at all, the appellate court should not substitute for the trial court in weighing the evidence and in fact finding."]; see also *Johnson*, *supra*, 72 Cal.App.4th at p. 365 [finding that the trial court erroneously found that the plaintiff failed to produce sufficient evidence to prove actual damages at a prove-up hearing and so reversing and remanding for the court to reconsider the issue at a new hearing.)

## DISPOSITION

The order of dismissal is vacated and the case is remanded for the superior court to conduct a prove-up hearing in which it will hear appellant's evidence. If the court determines that appellant has established a prima facie case under the UFTA, it will then enter a default judgment for appellant. Appellant will bear his own costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.



We concur:



EPSTEIN, P. J.                    SUZUKAWA, J.

8