Filed 3/3/21  Rodrigues v. Steele CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MARK RODRIGUES, | B289995 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SC120499) |
| v. | |
| NICOLAS STEELE et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Nancy L. Newman, Judge.  Affirmed.

Bensamochan Law Firm and Eric Bensamochan for Defendants and Appellants.

Troy Gould and Amy N. Stalling for Plaintiff and Respondent.

Defendants and appellants Nicolas Steele (Steele), Lilia Stepanova Steele (Stepanova), and Steele Aviation, Inc. (Steele Aviation)[1] appeal from the default judgment entered against them and in favor of plaintiff and respondent Mark Rodrigues (plaintiff) after the trial court granted terminating sanctions against defendants for discovery abuses and ordered their answers stricken. We affirm the judgment.

## BACKGROUND

**The lawsuit**

Plaintiff commenced this action in April 2013 for damages arising out of his ownership interest in Steele Aviation and for repayment of loans he made to Steele. The operative fourth amended complaint added Steele's wife, Stepanova, as a defendant, and asserted fourteen causes of action, including breach of contract and promissory estoppel.

Plaintiff alleged that he and Steele formed Steele Aviation in 2003 as equal partners; that between 2003 and 2012, plaintiff loaned more than $458,000 to Steele; that Steele repaid approximately $139,000 of the loaned funds but owed the balance of the unpaid loans, plus interest; and that Steele, in conspiracy with Stepanova, concealed Steele Aviation's income and refused to provide plaintiff with corporate documents and records to which he is entitled. Plaintiff requested return of the loaned funds, plus interest, and general damages exceeding $10 million.

---

[1] Steele, Stepanova, and Steele Aviation are referred to collectively as defendants.

**Motions to compel and prior discovery sanctions against defendants**

**Steele and Steele Aviation**

In October 2013, the trial court granted plaintiff's motion to compel the inspection of Steele Aviation's corporate records and imposed $1600 in monetary sanctions against Steele and Steele Aviation.

In April 2014, the trial court granted plaintiff's motions to compel further responses to written discovery and imposed $2,150 in monetary sanctions against Steele and Steele Aviation.

In February 2015, the trial court issued an order granting four motions to compel by plaintiff and requiring Steele and Steele Aviation to produce all responsive documents. The trial court's order contained a warning that terminating sanctions could be imposed if there was no indication that the imposition of lesser sanctions would compel compliance.

**Stepanova**

Plaintiff served Stepanova personally with a deposition subpoena in March 2014. The day before Stepanova's scheduled deposition, defendants' counsel advised that Stepanova would not appear because of illness. Ten minutes before Stepanova's rescheduled deposition, defendants' counsel advised that Stepanova would not appear. Counsel offered to produce Stepanova ten days later. The day before Stepanova's rescheduled deposition, defendants' counsel again advised that Stepanova would not appear. At her rescheduled July 7, 2014 deposition, Stepanova appeared, claimed to feel ill, and left without testifying.

In September 2014, Stepanova served plaintiff with a temporary restraining order, claiming he was stalking her. In October 2014, Stepanova's request for a temporary restraining order was denied. On October 20, 2014, plaintiff noticed Stepanova's deposition for November 3, 2014. On November 3, 2014, defendants' counsel advised that Stepanova would not appear. Defendants' counsel initially promised to provide alternative dates and then subsequently refused to do so on the ground that Stepanova was not a party. Plaintiff's counsel explained that Stepanova was added as a party in January 2015. In August 2015, plaintiff moved to compel Stepanova's deposition.

**Discovery referee's reports and recommendations**

In September 2015, the trial court referred the parties to a discovery referee.

In December 2015, the trial court adopted and signed a report and recommendation by the discovery referee granting plaintiff's motions to compel further discovery responses and compelling the deposition of Stepanova.

In May 2017, the trial court issued an order denying a motion by plaintiff for terminating sanctions but imposing monetary sanctions against defendants.

In October 2017, the discovery referee issued a report and recommendation requiring defendants to review and supplement their previous discovery responses and to provide verifications for those responses.

4

**Terminating sanctions**

Plaintiff appeared ex parte before the trial court in January 2018 to request an expedited hearing on a motion for terminating sanctions. When the trial court expressed concern about its calendar availability to hear the motion, plaintiff's counsel suggested having the discovery referee hear the motion and issue recommendations for the court to consider and rule upon. The trial court agreed and continued the matter.

The discovery referee heard plaintiff's request for terminating sanctions on February 2, 2018. The parties submitted written briefs before the hearing and attended the hearing with their respective attorneys. After the hearing, the discovery referee issued a written report finding defendants in violation of discovery orders and recommending terminating sanctions against them.

The trial court held a hearing on February 26, 2018 on the discovery referee's report and recommendation for terminating sanctions. The parties submitted written briefs before the hearing; attended the hearing; and through their attorneys, argued their respective positions. The trial court adopted the discovery referee's report and recommendation for terminating sanctions and ordered defendants' answer stricken.

**Trial on damages**

A prove up hearing on plaintiff's damages was held on March 14, 2018. Defendants were precluded from participating for lack of standing.

At the trial court's request, plaintiff provided a declaration setting forth the general nature of the relationship between the parties and the events preceding the filing of the lawsuit.

Plaintiff also testified, as did aviation expert Ryan Antoon, and forensic economist Douglas McDaniel.

Plaintiff testified between 2002 and 2012, he extended multiple loans to Steele, evidenced by cancelled checks, invoices, bank statements, and credit card statements, and the unpaid balance of the loans totaled $425,000 in 2012. Plaintiff further testified that in August and September 2012, Steele promised to sign a secured promissory note in the amount of $425,000, plus 10 percent interest, to induce plaintiff to forbear from collection efforts. Steele did not sign the note and failed to fulfill any of his obligations under the note.

Testimony, modeling and estimates provided by aviation expert Antoon established that defendants earned profits of $7,329,013 between 2005 and 2017.[2] Forensic economist McDaniel testified that the total equity value of the parties' joint venture could be established using two methods – the capitalization of cash flow method and the guided merged and acquired company method. He opined that a conservative valuation of the parties' joint venture was $5.8 million.

The trial court found that plaintiff and Steele, acting on behalf of himself and Steele Aviation, entered into an agreement to invest in the aviation industry, including the purchase and charter of aircraft, and that Steele, acting on behalf of Steele aviation and in conspiracy with Stepanova, breached the agreement with plaintiff. The trial court further found that defendants earned profits of $7,329,013 between 2005 and 2017, and that plaintiff was entitled to recover against defendants,

---

[2]     A court reporter was unavailable at the time Antoon testified, and his testimony is not part of the reporter's transcript of proceedings.

jointly and severally, one-half of those profits, totaling $3,664,509. The trial court accepted McDaniel's valuation of the joint venture at $5.8 million and found that plaintiff was entitled to recover against defendants, jointly and severally, 50 percent of that value, or $2.9 million. The court awarded plaintiff damages on his breach of contract claim in the amount of $3,664,509 for lost profits, plus $2.9 million for his 50 percent share of the joint venture, for a total award of $6,564,509 against defendants, jointly and severally.

As to plaintiff's promissory estoppel claim, the trial court found that Steele promised to sign a secured promissory note in the amount of $425,000, plus 10 percent interest in order to obtain plaintiff's forbearance from collection efforts, that Steele failed to fulfill the obligations of the note, and that plaintiff was entitled to recover $658,691.78 in interest against Steele only.

The court entered judgment in favor of plaintiff against defendants in the amount of $6,564,509 on the breach of contract claim, and against Steele in the amount of $658,691.78 on the promissory estoppel claim. This appeal followed.[3]

## DISCUSSION

Defendants contend the trial court denied them due process by imposing terminating sanctions in the absence of a noticed motion, that an evidence sanction was more appropriate, and that terminating sanctions against Stepanova were not

---

[3]     Respondent's Motion for Relief from Order Striking Respondent's Appendix, or in the alternative, Motion to Augment the Record, is denied as the appendix contains nothing necessary to evaluate the appeal.

warranted.  Defendants further contend there is insufficient evidence to support the damages award.

## I. Terminating sanctions
### A. Standard of review

A trial court's order for terminating sanctions is reviewed for abuse of discretion.  (*Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1102.)  Under this standard, the order may be reversed on appeal only if it is arbitrary, capricious, and exceeds the bounds of reason.  (*Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1244; *Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545.)  The party challenging the trial court court's order has the burden of demonstrating an abuse of discretion.  (*Laguna Auto Body v. Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481, 487, disapproved on other grounds by *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 478, fn. 4.)

### B.  Due process

The trial court's imposition of terminating sanctions absent a noticed motion did not deny defendants their due process rights.  Although discovery sanctions cannot be ordered without notice and an opportunity for hearing (Code Civ. Proc., § 2023.030)[4], defendants were not denied notice or the opportunity to be heard.  The record shows that defendants were admonished by the trial court in 2015 that their continued noncompliance with discovery orders could result in terminating sanctions, yet defendants continued to violate those orders.  Defendants received notice of the February 2, 2018 hearing

---

[4]     All further statutory references are to the Code of Civil Procedure.

8

before the discovery referee on plaintiff's request for terminating sanctions.  They also submitted a written letter brief to the discovery referee and argued at the hearing.

After the discovery referee issued a report and recommendation for terminating sanctions, defendants submitted written briefs to the trial court objecting to the discovery referee's report and recommendations.  Defendants also appeared before the trial court and argued at the February 26, 2018 hearing at which the trial court adopted the discovery referee's report and recommendation for terminating sanctions.

Defendants' appearance at the February 26, 2018 hearing also forfeited any appellate challenge to the sanctions imposed at that hearing.  (*Alliance Bank v. Murray* (1984) 161 Cal.App.3d 1, 6 (*Alliance Bank*).)  The facts here are similar to those in *Alliance Bank*, a case in which we find dispositive guidance.  In *Alliance Bank*, the trial court, in ordering the defendant to appear for deposition, ruled that the plaintiff could seek terminating sanctions upon an ex parte application if the defendant did not comply with the order.  (*Alliance Bank,* at pp. 3-4.)  When the defendant failed to appear for deposition, the plaintiff applied ex parte for sanctions.  The defendant appeared, through counsel, at the hearing on the ex parte application and opposed it on the merits.  At the hearing, the trial court issued terminating sanctions against the defendant by striking his answer and entering a default.  (*Id.* at pp. 4-5, 7-9.)  The appellate court in *Alliance Bank* held that the trial court's initial order permitting the plaintiff to seek sanctions on an ex parte basis was "invalid for being in excess of the court's jurisdiction" but nevertheless affirmed the sanctions order.  (*Id.* at p. 6.)  The court concluded that the defendant, by appearing at the ex parte hearing and

9

opposing it on the merits, had forfeited any contention as to defective notice and had impliedly consented to "any exercise of jurisdiction in excess of the court's authority." (*Id.* at pp. 7-9.)

Here, as in *Alliance Bank*, defendants appeared through their counsel at the hearing on plaintiff's ex parte application for terminating sanctions and had the opportunity to oppose the sanctions motion on the merits. By doing so, they waived any argument on appeal that they had insufficient notice of the motion. (*Alliance Bank, supra,* 161 Cal.App.3d at pp. 7-8.)

### C. Propriety of terminating sanctions

"A trial court may impose sanctions, including terminating sanctions, for a party's misuse of the discovery process, which includes disobedience of a court order. [Citation.]" (*Sole Energy Co. v. Hodges* (2005) 128 Cal.App.4th 199, 207; §§ 2023.010, subds. (d), (g); 2023.030, subd. (d)(1), (4).) Failing to respond to an authorized method of discovery, evading discovery, and disobeying a court order to provide discovery are both misuses of the discovery process. (§ 2023.010, subds. (d), (g).) Terminating sanctions are justified when the discovery violation "'is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules.'" (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 297, fn. omitted.)

Defendants concede that "[i]t is hard to defend Steele's discovery conduct in this case." They nevertheless argue that a terminating sanction was excessive, and that a lesser sanction should have been imposed. There is substantial evidence that defendants willfully failed to comply with the trial court's discovery orders and that Stepanova willfully evaded her

10

deposition.  The record discloses no abuse of discretion in the trial court's imposition of terminating sanctions.

## II.  Damages

A judgment by default "confesses" or expressly admits the material facts alleged by the plaintiff.  (*Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 823.)  Because the default admits properly pleaded facts, the plaintiff has no responsibility to provide the court with sufficient evidence to prove them—they are treated as true for purposes of obtaining a default judgment.  (*Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1746.)

To recover damages on a default judgment, the plaintiff need only make a prima facie showing of entitlement to damages.  (*Johnson v. Stanhiser* (1999) 72 Cal.App.4th 357, 361.)  Our review of the evidence to support damages on a default judgment is limited to whether damages are excessive.  (*Uva v. Evans* (1978) 83 Cal.App.3d 356, 363.)  We may only set aside damages that are grossly disproportionate to the evidence and appear to be the result of passion, prejudice, or corruption.  (*Ibid*.)

Plaintiff presented evidence sufficient to make a prima facie showing of entitlement to damages.  Plaintiff testified at trial that he and Steele formed Steele Aviation in 2003.  The allegations of the fourth amended complaint, taken as true, establish that Steele and plaintiff each owned 50 percent of Steele Aviation.  Plaintiff testified that he made an initial capital contribution of $50,000, that he never received any distributions from Steele Aviation, and that defendants concealed Steele Aviation's income from him.  Plaintiff further testified that extended multiple loans to Steele between 2003 and 2012, that

11

the unpaid balance of those loans was $425,000.  When plaintiff threatened to undertake collection efforts, Steele agreed to sign a secured promissory note in the amount of $425,000.  Steele subsequently refused to sign the note or to make any further payments.

Defendants fail to establish that the damages award was excessive.  The award is less than the amount sought in the fourth amended complaint and is supported by plaintiff's declaration and trial testimony; the testimony of two expert witnesses; and documentary evidence, including the promissory note agreed to by the parties, email exchanges between the parties, discovery responses identifying Steele Aviation's gross revenues, plaintiff's bank statements and cancelled checks, Steele Aviation credit card statements, Steele Aviation's hanger lease agreement, list of aircraft, and quotes for charter flights.

Defendants fail to meet their burden of showing that the trial court's imposition of terminating sanctions was an abuse of discretion or that the damages awarded were excessive.

## DISPOSITION

The judgment is affirmed.  Plaintiff shall recover his costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:


_____, P. J.    _____, J.
LUI                          ASHMANN-GERST


12