Filed 2/18/26  EFD USA v. Band Pro Film and Digital CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| EFD USA, INC., et al., | B329314 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC661332) |
| v. | |
| BAND PRO FILM AND DIGITAL INC., et al., | |
| Defendants and Respondents. | |

APPEAL from judgment and an order of the Superior Court of Los Angeles County, Daniel S. Murphy and Michael Linfield, Judges.  Affirmed.

Azar Law Group, David E. Azar; Keiter Appellate Law and Mitchell Keiter, for plaintiffs and appellants EFD USA, Inc. and Georgina Teran.

Enenstein Pham Glass & Rabbatt, Teri T. Pham and Matthew W. Rosene, for defendants and respondents Band Pro Film & Digital, Inc., Direct Video Warehouse, Inc., and Amnon Band.

———————————

Plaintiff EFD USA, Inc. (EFD) appeals from the judgment entered following a jury trial and a bench trial on its claims against defendants Band Pro Film & Digital, Inc. (Band Pro), Amnon Band (Band), and Direct Video Warehouse, Inc. (DVWI) (together, the Band Defendants), and Brandon Brooks.  A jury awarded EFD all damages it requested, and the trial court awarded EFD additional damages based on a restitution claim. On appeal, EFD argues that the trial court erred by offsetting those damages based on a pretrial settlement.  In addition, EFD challenges the trial court's resolution of its unfair competition law (UCL) claims following a bench trial, the court's denial of its request for prejudgment interest, and several factual findings in the statement of decision.

EFD separately appeals from a default judgment entered against defendant GroundSeven Ventures, Inc. (GroundSeven) and an order denying its motion for a new trial.  EFD contends the award as to GroundSeven was inadequate.

For the reasons discussed herein, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I.     The underlying dispute

EFD is a television and film production company.  Among other things, EFD purchases and leases cinematography equipment and rents the equipment to other entities.

2

EFD began leasing equipment from Band Pro in 2012. The leases involved financing agreements. Band Pro employee Brandon Brooks managed some of the transactions. Some of the transactions involved DVWI, which is owned by Band. Greg Bisel, AKT Enterprises LLC (AKT), MaxPro Leasing LLC, and Technijian Inc. (together, the Bisel Defendants) were also involved in some transactions.

In 2017, EFD and its owner and operator, Georgina Teran, sued the Band Defendants, Brooks, the Bisel Defendants, and several Does. In the operative amended complaint, EFD brought claims against all defendants for fraud, negligent misrepresentation, aiding and abetting fraud, a violation of California's Unfair Competition Law (UCL) (Bus. & Prof. Code § 17200 et seq.), breach of fiduciary duty, breach of implied contract, intentional interference with prospective economic relations, and money had and received.[1] The complaint alleged that "each Defendant acted as the actual or ostensible agent, employee, and/or co-conspirator of each other Defendant and, in performing the actions alleged herein, acted within the course and scope of such agency, employment, and/or conspiracy." The complaint further alleged that defendants' conduct caused damages to EFD exceeding $2 million.

EFD brought a separate claim for breach of an implied contract against Band Pro and DVWI, and a conversion claim against the Bisel Defendants. Finally, EFD and Teran brought claims for civil extortion and defamation against Band Pro and Band.

---

[1]     Because the exact nature of the fraud is not relevant to any issue on appeal, we do not describe it any further.

Plaintiffs later named GroundSeven as a Doe defendant. The record on appeal does not include an amended complaint or other filing reflecting what specific claims or facts, if any, plaintiffs alleged as to GroundSeven.

## II. Settlement with the Bisel Defendants

EFD executed a "full and complete settlement" of its claims against the Bisel Defendants for $375,000 in June 2021 (the Bisel Settlement). The Bisel Settlement also resolved a cross-complaint filed by AKT and a separate invasion of privacy lawsuit that Bisel had filed against EFD and Teran.

The trial court granted plaintiffs' unopposed motion for a determination of good faith settlement with the Bisel Defendants. (Code Civ. Proc., § 877.6.)[2] In the motion, plaintiffs asserted: "No allocation is required here, as the interests of both plaintiffs are aligned, as Teran is EFD's founder, President, and CEO of EFD." Neither the motion nor the order discussed allocation any further.

## III. Resolution of plaintiffs' remaining claims

The trial court granted the Band Defendants' motion for summary adjudication on plaintiffs' claims for civil extortion and defamation. That ruling resolved all claims brought by Teran.

EFD proceeded to a jury trial against Band, Band Pro, and Brooks on its claims for fraud, aiding and abetting fraud, and money had and received. At trial, EFD focused on 16 specific transactions and asked the jury to award it $109,958.17 in economic damages. On October 19, 2022, the jury found Band

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

4

Pro and Brooks liable on all three counts and found Band liable for aiding and abetting fraud. The jury awarded EFD $109,958.17. The special verdict attributed $49,481.176 to Band Pro, $49,481.176 to Brooks, and $10,995.817 to Band.[3] The jury also awarded EFD prejudgment interest.

On November 4, 2022, the Band Defendants moved to offset the jury's damages award under section 877. That statute provides that a good faith settlement with one defendant "shall reduce" a judgment against nonsettling joint tortfeasors "claimed to be liable for the same tort." (§ 877.) The motion argued that all defendants were "claimed to be liable" for the claims that proceeded to trial because the complaint brought those claims against all defendants and alleged that all defendants were one another's agents, principals, and co-conspirators. Thus, the motion asserted that the judgment should be reduced by the amount of the Bisel Settlement.

EFD's opposition argued that section 877 is inapplicable. It contended that each disputed transaction was a separate injury and a separate tort, and "there was no claim" that the nonsettling defendants were liable for the transactions resolved by the Bisel Settlement. Alternatively, the opposition argued that even if section 877 applied, the Bisel Settlement had been allocated to about 40 transactions. The opposition asserted that if the Bisel Settlement had not already been allocated, the court should allocate that settlement. In support of the opposition, Teran and EFD's damages expert, Jeffrey Bussell, both declared that they understood the Bisel Settlement to cover 38 specific transactions but not the 16 transactions addressed at trial.

---

[3] The jury's special verdict specified damages to three decimal points.

5

In its statement of decision, the trial court granted the Band Defendants' request for an offset. The court recognized that EFD proceeded to trial on claims brought against all defendants, and that EFD alleged that all defendants acted as the "agent, employee, and/or coconspirator of each other Defendant" in committing the acts identified in the complaint. Because the Band Defendants and Brooks were nonsettling tortfeasors whom EFD claimed to be liable for the same torts, the trial court concluded that section 877 required an offset.

The court recognized that an offset may be allocated to certain causes of action. However, it determined that EFD presented no evidence that the Bisel Settlement had been allocated, and the court declined to consider the post-settlement declarations offered by EFD. Therefore, the court granted the motion for a section 877 offset and reduced EFD's damages by the amount of the Bisel Settlement, to zero.

The statement of decision also concluded that EFD was entitled to compound prejudgment interest. However, since the judgment was fully offset by the Bisel Settlement, the court determined that there was no balance on which interest could have accrued.

Next, the statement of decision addressed EFD's UCL claims, which the court heard in a bench trial. The court rejected EFD's UCL claims against the Band Defendants and Brooks because EFD sought damages, which are unavailable in a UCL claim. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1150–1151 (*Korea Supply*).) The court found that DVWI was liable under the UCL and accepted EFD's contention that it was entitled to around $23,500. But the court concluded that this amount was fully offset by the Bisel Settlement.

6

The statement of decision also resolved defendants' unclean hands defense.  The court found that EFD and Teran "actively participated in a scheme to defraud financial lenders."  However, the court determined that EFD "purged its fraud" by paying off all relevant loans, and therefore it concluded that EFD's claims were not barred by the unclean hands doctrine.  In the statement of decision and the judgment, the court found that Teran was not credible.

Finally, the statement of decision resolved EFD's claims against GroundSeven.  GroundSeven did not respond to the complaint.  EFD requested a default judgment and sought damages of $591,126.23 plus $444,760.19 in prejudgment interest.  Its request assumed that GroundSeven could be held responsible for all damages requested in the complaint.  EFD's damages expert, Bussell, submitted a declaration in support of EFD's damages claim under that same assumption.

Brooks, acting pro per, opposed the request for default judgment as to GroundSeven.  In the opposition, Brooks asserted that he had testified at trial that he was the sole owner and agent of GroundSeven.  He therefore argued that GroundSeven's liability could not exceed Brooks's own liability, as determined by the jury.  Brooks also urged that GroundSeven's liability should be offset by the Bisel Settlement.

The court entered a default judgment in favor of EFD and against GroundSeven and awarded EFD $49,481 in damages plus $41,847.37 in prejudgment interest.

EFD moved for a new trial as to GroundSeven, arguing in relevant part that the court's damages award was inadequate.  The court denied the motion.  It determined that "GroundSeven's liability was dependent on Brooks' actions."  It concluded that

7

EFD had only proved that GroundSeven's conduct resulted in $49,481 in damages (i.e., the same amount as the special verdict as to Brooks). The court also found that Bussell's declaration was "quite different" from his testimony at trial, and that Bussell was not "persuasive."

EFD timely appealed from the judgment as to the Band Defendants and Brooks (the "R" appeal). EFD also timely appealed from the default judgment as to GroundSeven and from "all orders that are separately appealable" (the GroundSeven appeal).[4]

## DISCUSSION

### I. Inaccurate citations in EFD's appellate briefing

We begin by discussing several fabricated quotations and inaccurate descriptions of legal authority in EFD's appellate briefing.

In the "R" appeal, EFD's leading argument is that "California law mandates treating separate obligations as distinct claims when determining the applicability and scope of a good faith settlement offset. *Lilienthal & Fowler v. Superior*

---

[4] Both notices of appeal also identify Teran as an appellant. However, appellants' briefing does not challenge the trial court's grant of summary adjudication on the only two counts brought by Teran. Similarly, the notice of appeal in the "R" appeal purports to challenge postjudgment orders, but EFD's appellate briefing does not separately challenge any such orders. We therefore reject any argument as to these issues as abandoned. (*Case v. State Farm Mutual Automobile Ins. Co., Inc.* (2018) 30 Cal.App.5th 397, 402 (*Case*) ["[O]ur review is limited to contentions adequately raised in [appellant's] briefs"].)

8

*Court* [(1993) 12 Cal.App.4th 1848 (*Lilienthal*)]."  EFD further asserts that "*Lilienthal* clarified the meaning of 'same tort' in the context of settlement offsets, holding that claims are distinct when they involve different: '(1) times of services performed; (2) specific obligations involved; and (3) resulting damages.' *Lilienthal & Fowler v. Superior Court, supra,* 16 Cal.Rptr.2d at p. 461."  This quotation does not appear in *Lilienthal.*  More significantly, contrary to EFD's assertion, the case does not address settlement offsets at all.[5]

EFD also contends that the trial court erred by failing to consider two declarations in determining whether the Bisel Settlement had been allocated.  Citing *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit* [*Assn.*] (2013) 55 Cal.4th 1169, 1182 [(*Riverisland*)], EFD asserts that " '[e]xtrinsic evidence is admissible to interpret the terms of a written settlement agreement reached in a mediation containing a valid arbitration clause.' "  *Riverisland* contains no such quotation, and it does not mention settlements, mediation, or arbitration.  And while the case discusses the role of extrinsic evidence in contract interpretation, it correctly explains that such evidence generally "may not be relied upon to alter or add to the terms of the writing."  (*Id.* at p. 1174.)

---

[5]     *Lilienthal* addressed "whether the trial court may refuse to rule on the merits of a summary adjudication motion made pursuant to [section 437c, subdivision (f)], when such an adjudication would not dispose of an entire cause of action because two separate and distinct wrongful acts are combined in the same cause of action." (*Lilienthal, supra,* 12 Cal.App.4th at p. 1850.)  EFD does not explain why this rule could or should be applied in the context of section 877 settlement offsets.

9

Relatedly, EFD asserts that the Bisel Settlement "should be interpreted like a contract, 'by applying the objective theory of contracts to determine the mutual intent of the parties as evidenced by their communications and other objective manifestations of their intent.' *Leaf v. City of San Mateo* (1980) 104 Cal.App.3d 398, 411." The *Leaf* case does not include this quotation nor any similar language; it is a nuisance case and did not involve a contested contract.

While *Lilienthal*, *Riverisland* and *Leaf* represent just three of the 28 cases cited in EFD's opening brief in the "R" appeal, they are the only three cases discussed in the first 13 pages of its argument section. Respondents' brief pointed out the deficiencies we have described, and other potential misrepresentations.[6] In its reply, EFD failed to acknowledge or explain these inaccuracies. In fact, EFD's reply continues the trend: the leading argument therein is that a respondent's " 'failure to respond to an argument raised in the opening brief waives any objection.' (*Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 90 [(*Rudick*)].)" The *Rudick* case includes no

---

[6] For example, EFD claims that in *Dell'Oca v. Bank of New York Trust Co., N.A.* (2008) 159 Cal.App.4th 531, the court held that an offset was "improper," but in fact the court expressly declined to resolve the offset issue raised on appeal. (*Id*. at p. 561.) EFD also asserts that this case "mirrors *Dillingham* [*Construction*], *N.A., Inc. v. Nadel* [*Partnership*], *Inc.* (1998) 64 Cal.App.4th 264 [(*Dillingham*)]." But a section 877 offset was "not an issue" in *Dillingham*. (*Dillingham,* at p. 282.)

10

such quotation.[7]  EFD's reply also argues that " '[a] judgment by default admits all material allegations of the complaint.' (*Milstein v. Sartain* (1943) 56 Cal.App.2d 924, 933.)"  While perhaps a correct statement of law, *Milstein* does not include this language.

Prior to oral argument, we issued an order to show cause (OSC) why this court should not sanction EFD's attorneys, David Azar and Mitchell Keiter, for pursuing a frivolous appeal.  The OSC noted that several quotations in EFD's briefing in the "R" appeal appear to be fabricated.  Azar, who signed the opening brief, and Keiter, who signed the reply, both filed written responses to the OSC.

According to his response to the OSC, Azar was EFD's trial counsel.  Azar hired Keiter, a Certified Appellate Law Specialist, to assist with the appeal.  Azar ultimately prepared the opening brief and most of the reply brief.  Keiter formatted and filed the reply brief.

Azar asked an artificial intelligence (AI) "consultant" to use AI to prepare a draft opening brief using trial court briefs filed in the underlying lawsuit and an outline that Azar had prepared.  The AI consultant cautioned Azar to double check the citations in the draft to confirm that the AI system had not fabricated any

---

[7]     The case reasoned that the *appellants* "implicitly concede[d]" a point by failing to respond to it in their reply. (*Rudick*, *supra*, 41 Cal.App.5th at p. 90.)  Of course, appellants bear the burden of establishing error on appeal.  A respondent has no such burden, and "even a respondent's *complete failure* to address an appellant's argument does not require us to treat the failure to respond as a concession the argument has merit." (*Griffin v. The Haunted Hotel, Inc.* (2015) 242 Cal.App.4th 490, 505.)

legal authorities. After completing the draft opening brief, Azar asked a paralegal to cite check the legal authorities. He then realized the brief exceeded the word limit by around 6,000 words. Azar and his AI consultant decided to use an unidentified "AI system" to shorten the draft. Azar directed the system to "keep all citations to authority, factual and legal, unless duplicative." There is no indication that Azar took any steps to confirm whether the AI system changed any citations, such as asking a paralegal to cite check the brief for a second time. As we have discussed, EFD's opening brief in the "R" appeal included several fabricated quotations. Azar investigated the matter after receiving the OSC, and he attributes these errors to the AI system that he used to shorten the opening brief.

Azar also used an AI system to reduce the word count in EFD's reply brief in the "R" appeal. He asked an "appellate specialist" to cite check the reply brief after that process was complete. As we have discussed, the reply brief nonetheless included at least two fabricated quotations from real cases. After filing the reply, Azar discovered citation errors in the brief, and he and Keiter prepared a notice of errata and a corrected reply brief. Azar asserts that he and Keiter both believed that the other had submitted these documents, and the corrected reply was never filed.

Azar accepts responsibility for the errors in both briefs. He urges this court not to dismiss the appeal, but he acknowledges that monetary sanctions would be justified.

Keiter's response to the OSC asserts that he was responsible only for formatting and filing the final version of EFD's reply brief. He received the reply brief just three hours before the filing deadline, and did not have time to cite check it

before filing.  Keiter acknowledges that the mistakes in the briefing are "unacceptable," but he asserts that sanctions are unnecessary because the fabricated quotations are substantively similar to propositions in the cases cited.

"To state the obvious, it is a fundamental duty of attorneys to read the legal authorities they cite in appellate briefs or any other court filings to determine that the authorities stand for the propositions for which they are cited.  Plainly, counsel did not read the cases he cited before filing his appellate briefs: Had he read them, he would have discovered, as we did, that the cases did not contain the language he purported to quote [and] did not support the propositions for which they were cited . . . ." (*Noland v. Land of the Free, L.P.* (2025) 114 Cal.App.5th 426, 445 (*Noland*).)  These failures violate the California Rules of Court, which require that arguments be supported "with citations to real (as opposed to fabricated) legal authority." (*Id*. at p. 447, citing Cal. Rules of Court, rule 8.204(a)(1)(B).)  On our own motion, we may impose sanctions for reliance on nonexistent legal authority and for unreasonable violations of the California Rules of Court. (*Noland*, at p. 445; Cal. Rules of Court, 8.276.)

Sanctions may be awarded to compensate "the clerk of the court for conduct that unnecessarily burdens the court and the taxpayers."[8]  (*Noland*, *supra*, 114 Cal.App.5th at p. 447.)  The fabricated citations in EFD's briefing required this court to spend unnecessary time attempting to locate nonexistent quotations and legal propositions and independently researching the issues presented.  Under these circumstances, an award of sanctions

---

[8]     Sanctions may also be awarded to compensate a party for the costs of responding to a frivolous appeal.  Respondents did not request a sanctions award on this basis.

payable to this court is appropriate. Because the errors were caused primarily by Azar's failure to adequately safeguard against AI hallucinations, the sanctions will be imposed against Azar alone.

As for the amount of sanctions, this court recently explained that as of 2013, "appellate sanctions for frivolous appeals recently had ranged from $6,000 to $12,500, 'generally, but not exclusively, based on the estimated cost to the court of processing a frivolous appeal.' " (*Noland*, *supra*, 114 Cal.App.5th at p. 448.) In *Noland*, we imposed a sanction of $10,000 because "nearly all of the quotations in plaintiff's opening brief, and many of the quotations in plaintiff's reply brief, [were] fabricated." (*Id.* at pp. 430, 448.) The deficiencies in this case, while similar in kind, are far less widespread. And Azar accepts responsibility for the errors, which he asserts were inadvertent. We will impose a sanction of $900, which shall be payable by Azar to the clerk of this court within 30 days after the remittitur is filed.

## II. The trial court did not err or abuse its discretion by offsetting the judgment based on the Bisel Settlement

In the "R" appeal, EFD primarily argues that the trial court erred and abused its discretion when it offset the jury's damages award as to the Band Defendants and Brooks by the amount of the Bisel Settlement. We disagree and affirm.

### A. Legal framework and standard of review

"Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort . . . [¶] (a) . . . it

14

shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater." (§ 877, subd. (a).) In other words, "when one of a number of tort defendants enters into a settlement agreement with a plaintiff, the nonsettling defendants' liability to the plaintiff is reduced by the amount of the settlement." (*Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1018.)

"[T]he language of section 877 is significant—its drafters did not use the narrow term 'joint tortfeasors,' they used the broad term 'tortfeasors claimed to be liable for the same tort.' This language was meant to eliminate the distinction between joint tortfeasors and concurrent or successive tortfeasors [citation], and to permit broad application of the statute." (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 302.) Relatedly, "section 877 does not require any defendant to prove that settling codefendants were in fact liable, only that they were 'claimed to be liable' for the same tort." (*Knox v. County of Los Angeles* (1980) 109 Cal.App.3d 825, 833 (*Knox*).)

"We generally review a ruling granting or denying a section 877 settlement credit under the deferential abuse of discretion standard. [Citation.] To the extent that we must decide whether the trial court's ruling was consistent with statutory requirements, we apply the independent standard of review." (*Wade v. Schrader* (2008) 168 Cal.App.4th 1039, 1044.)

### B. *The trial court did not abuse its discretion in applying section 877*

In the operative complaint, EFD alleged that all defendants were liable for fraud, aiding and abetting fraud, and money had and received, and alleged that each defendant acted as the agent

or co-conspirator of all other defendants in committing all the acts leading to EFD's injuries.  In short, all defendants were "tortfeasors claimed to be liable for the same tort[s] . . . ."  (§ 877.)  The Bisel Defendants settled all of EFD's claims against them for $375,000, and the court determined that this was a good faith settlement.  (§ 877.6.)  EFD proceeded to a jury trial on its claims against the Band Defendants and Brooks for fraud, aiding and abetting fraud, and money had and received.  It won a $109,958.17 verdict.

Under these circumstances, section 877 required that the judgment against the nonsettling defendants "shall" be reduced. And because the Bisel Settlement did not stipulate the amount of the reduction, the statute required that the judgment be reduced by the full amount of the settlement.  (§ 877.)  Since "the settlement amount is greater than the damage award, the award is entirely offset, resulting in a zero judgment."  (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1330.)  The court did not abuse its discretion by complying with the statute.

EFD argues that section 877 does not apply, citing *Carr v. Cove* (1973) 33 Cal.App.3d 851, in which the appellate court affirmed the trial court's denial of a motion to offset a verdict under section 877.  (*Carr,* at pp. 853, 857.)  *Carr* is distinguishable.  There, the plaintiff was injured in two car accidents involving different drivers that occurred on different dates.  The plaintiff sued both drivers in a single lawsuit.  She settled with the first driver and proceeded to trial against the second.  The trial court declined to offset the verdict against the second driver based on the settlement against the first.  The appellate court affirmed, reasoning that section 877 did not require an offset "where separate tortfeasors cause separate

16

injuries," noting that there was "no suggestion that [the first driver] was liable for the second accident." (*Carr,* at p. 854.)

Unlike in *Carr*, the operative complaint in this case alleged that all defendants were responsible for all of the fraudulent conduct that proceeded to trial. And on appeal, EFD concedes that the Bisel Settlement included a release for claims based on the transactions that were presented to the jury, and that part of the settlement is "attributable" to those transactions. Because EFD "claimed" that all defendants were "liable for the same tort[s]," section 877 applied. (§ 877.)

## C.    EFD has not established that the trial court erred by declining to allocate the Bisel Settlement

EFD also argues that the Bisel Settlement was allocated to certain specific claims or transactions, and the trial court was required to limit the offset accordingly. We again disagree.

The parties to a settlement may allocate portions of the settlement payment to certain parties, claims, or categories of harm. (Cf. *Erreca's v. Superior Court* (1993) 19 Cal.App.4th 1475, 1488 [settlement in construction lawsuit allocated between damages attributable to grading errors and damages arising from other problems].) "Where there is a complete dismissal of a defendant, and a plaintiff seeks an allocation of the settlement with that defendant for purposes of limiting the setoff against another defendant's liability, the burden is on the plaintiff to establish facts to justify the allocation." (*Ehret v. Congoleum Corp.* (1999) 73 Cal.App.4th 1308, 1322 (*Ehret*); *Erreca's*, at p. 1491 ["Where the settling parties have agreed to allocate less than all of the settlement amount to a portion of the causes of action, an evidentiary showing is required to justify such

17

allocation"]; *Alcal Roofing & Insulation v. Superior Court* (1992) 8 Cal.App.4th 1121, 1124–1125 ["where the cash amount of the settlement does not dictate the amount of the offset, the settling parties must include an allocation or a valuation in their agreement"].)

Thus, unless a plaintiff establishes that there was a "good faith agreement between plaintiffs and [settling defendants] allocating the settlement consideration as between the . . . causes of action in which joint tortfeasor status was alleged, defendants [are] entitled to a setoff of the entire settlement figure." (*Knox*, *supra*, 109 Cal.App.3d at p. 836; *Dole Food Co., Inc. v. Superior Court* (2015) 242 Cal.App.4th 894, 916–917 [where settlement was "entirely unallocated," entire settlement was "theoretically available as a setoff"].)

The Bisel Settlement did not stipulate to allocate the settlement payment to any specific disputes or transactions. Under these facts, the trial court did not abuse its discretion in concluding that the nonsettling defendants were "entitled to a setoff of the entire settlement figure." (*Knox, supra*, 109 Cal.App.3d at p. 836; *Dillingham*, *supra*, 64 Cal.App.4th at p. 287 [absent any allocation, the "court must allocate in the manner which is most advantageous to the nonsettling party"].)

EFD's arguments to the contrary are not persuasive. EFD contends that the court erred by failing to consider two declarations filed in support of its opposition to the section 877 offset. Citing contract law principles, EFD asserts that the declarations clarify the meaning of the Bisel Settlement. In one declaration, Teran claimed that the Bisel Settlement was based on about 38 transactions and "did not include" any of the transactions presented to the jury. In the second, EFD's damages

18

expert, Bussell, opined that the Bisel Settlement resolved "approximately 40 transactions" which "do not overlap with the 16 leases" addressed at trial. But courts may only consider extrinsic evidence to construe ambiguous terms in a contract, not "to alter or add to the terms of the writing." (*Riverisland, supra*, 55 Cal.4th at p. 1174.) The Bisel Settlement includes no reference to allocation nor to any specific transactions. The declarations therefore would not clarify any ambiguous term; they would "add to" the settlement, and the trial court did not err in ignoring the declarations. (*Ibid.*)

EFD also notes that the Bisel Settlement resolved some disputes that were unrelated to the claims that proceeded to trial. It therefore asserts that the overlap between the settlement and the judgment cannot justify a full offset. But EFD's own authority recognizes that nonsettling defendants are entitled to an offset "absent a showing by plaintiffs that none of the consideration paid for the settlement related to the joint causes of action." (*Dillingham, supra*, 64 Cal.App.4th at p. 288.) EFD has not established that the Bisel Settlement was unrelated to the joint causes of action. To the contrary: EFD concedes that the Bisel Settlement included a release of liability as to the transactions that proceeded to trial, and that some portion of the settlement can be attributed to those transactions.

To the extent EFD means to argue that the court should have considered defendants' relative responsibility, California courts have "rejected a plaintiff's contention that the nonsettling defendant was only entitled to have the judgment against it ' "reduced by the proportion of liability attributable to settled co-tortfeasors rather than by the amount of consideration given for the settlement." ' " (*Knox, supra*, 109 Cal.App.3d at p. 833,

19

quoting *Jaramillo v. State of California* (1978) 81 Cal.App.3d 968, 970; *McGee v. Cessna Aircraft Co.* (1978) 82 Cal.App.3d 1005, 1022 [same].)

In addition, EFD contends that the trial court erred by failing to "perform the mandatory equitable balancing analysis" when resolving defendants' offset motion.  EFD refers to one of the "major goals" of sections 877 and 877.6: "the equitable sharing of costs among the parties at fault . . . ."  (*Abbott Ford, Inc. v. Superior Court* (1987) 43 Cal.3d 858, 872.)  But equitable sharing of costs is only relevant to the section 877.6 good faith settlement analysis.  Specifically, a settlement must be " 'in the ballpark' " of the settling defendants' alleged proportionate liability in order to be approved as a good faith settlement, so that there is "at least some rough measure of fair apportionment of loss between the settling and nonsettling defendants."  (*Abbott,* at p. 874.)  EFD does not challenge the trial court's good faith settlement ruling, and it has not identified any authority establishing that equitable sharing of costs plays any role in the subsequent section 877 offset analysis.

Next, EFD asserts that the trial court should have considered certain evidence of Brooks's role in the fraudulent transactions.  EFD claims that this supports its assertion that the court should have allocated the Bisel Settlement in some way.  But EFD also fails to explain how the actions of Brooks, who was not a party to the Bisel Settlement, could help EFD meet its burden of establishing that the settlement had been allocated.  (*Ehret, supra,* 73 Cal.App.4th at p. 1322; *Dills v. Redwoods*

20

*Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [appellate court will not develop appellant's arguments].)[9]

EFD also claims the trial court erred by failing to compel arbitration of the allocation issue.  The Bisel Settlement specified that any "disagreements over the form or content of the [Bisel Settlement] shall be decided in a binding arbitration."  However, EFD did not move to compel arbitration.  Rather, in its motion for a new trial, EFD argued that the mediator who oversaw the Bisel Settlement "should be given the opportunity to decide" whether the settlement "inherently included an allocation and what the nature and extent of that allocation should be."  In short, EFD moved for a new trial on the basis that a hypothetical arbitration might result in new evidence of allocation.  "A motion for a new trial on the grounds of newly discovered evidence is generally 'a matter which is committed to the sound discretion of the trial court,' and 'a reviewing court will not interfere unless a clear abuse of discretion is shown.' " (*Aron v. WIB Holdings* (2018) 21 Cal.App.5th 1069, 1078.)  The trial court did not abuse its discretion in declining to order a new trial based on EFD's

---

[9]     Relatedly, in the "R" appeal, EFD asserts that the trial court should have awarded greater damages as to GroundSeven based on Brooks's conduct, and that the court should have considered that award when determining how to apply the section 877 offset.  Because EFD raised these same arguments in its separate appeal from the GroundSeven default judgment, we address these issues in our analysis of that appeal.

speculation that the mediator might retroactively allocate the settlement in arbitration.[10]

## III. EFD has not identified any prejudicial error relating to prejudgment interest

Next, EFD argues that the trial court erred by failing to calculate prejudgment interest. The jury awarded EFD prejudgment interest in its special verdict. (Civ. Code § 3288 [jury may award prejudgment interest in fraud cases].) The court determined that EFD was entitled to compound prejudgment interest. However, the court concluded that no interest could be calculated because, in light of the offset, "there is no balance for interest to accrue on." It explained that "a plaintiff, who in good faith settles with a joint tortfeasor before judgment against a nonsettling joint tortfeasor, may thereafter recover from the nonsettling defendants: (a) prejudgment interest up to the date of settlement on the *total* judgment; and (b) prejudgment interest after the date of settlement only on the *balance* of the total judgment remaining after its reduction by the settlement sum paid." (*Newby v. Vroman* (1992) 11 Cal.App.4th 283, 288 (*Newby*).)

The Band Defendants concede that EFD is entitled to "prejudgment interest up to the date of settlement," which was

---

[10] For the first time in its reply brief in the "R" appeal, EFD asks this court to reverse postjudgment orders awarding costs to respondents, vacate the associated cost awards, and declare EFD the prevailing party. EFD has not articulated any independent basis for these requests, and they appear to depend on the success of its arguments relating to the section 877 offset. Because we affirm the trial court ruling on the offset, we deny these requests.

June 5, 2021, "on the *total* judgment." (*Newby*, *supra*, 11 Cal.App.4th at p. 288.) We agree. But EFD was not entitled to interest after the date of settlement, because by that time the "*balance*" of the judgment was reduced to zero. (*Ibid*.)

Even so, "the error was harmless, because it is not reasonably probable [plaintiff] would have obtained a more favorable result in its absence." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 570; see Cal. Const., art. VI, § 13 [reversal appropriate only where error caused prejudice].) According to EFD's damages expert, prejudgment compound interest through June 5, 2021 amounts to $44,418.40. When this figure is added to the judgment, the total damages award comes to $153,376.56. The $375,000 Bisel Settlement exceeded and fully offset this amount. Thus, although plaintiffs were entitled to prejudgment interest through the date of the Bisel Settlement, the court correctly concluded that EFD's total award was offset by the settlement, and that EFD should take nothing on its complaint.

## IV. EFD has not identified any basis to reverse the trial court's rulings on EFD's UCL claims

EFD also challenges the trial court's treatment of its UCL claims. None of its arguments warrants reversal.

EFD argues that the trial court failed to resolve its UCL claim against the Band Defendants and Brooks. Not so. The trial court determined that this claim, though framed as one for restitution, was in truth an improper "claim for damages" and rejected it. (*Korea Supply*, *supra*, 29 Cal.4th at p. 1150 ["individuals may not recover damages" in an action under the UCL].) EFD's appellate briefing does not challenge this aspect of the trial court's ruling, and therefore EFD forfeited any claim of error. (*Wall Street Network, Ltd. v. New York Times Co.* (2008)

23

164 Cal.App.4th 1171, 1177.) EFD also asserts that the trial court failed to provide any relief on its UCL claims against DVWI. In fact, the court concluded that DVWI was liable under the UCL and accepted EFD's argument that it was entitled to $23,527.29 in restitution. But the court determined that this amount would be offset by the Bisel Settlement. EFD does not acknowledge or challenge that decision. It therefore forfeited any challenge to the ruling. (*Ibid*.)

EFD also argues that the court should have issued an injunction. But EFD did not request that remedy. And while EFD claims injunctive relief is required for any UCL violation, in truth the UCL "does not mandate . . . injunctive relief when an unfair business practice has been shown." (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 180.)[11]

## V. EFD has not established any basis for reversal based on the trial court's credibility and unclean hands findings

Next, EFD argues that the judgment must be reversed because it stated that the court "did not find Georgina Teran to be credible." According to EFD, the jury's verdict reflects an implied finding that Teran was credible, and EFD contends that the jury's implied finding contradicts the court's credibility finding. However, the court resolved EFD's UCL claims and defendants' unclean hands arguments at a bench trial. As the

[11] EFD claims that *People v. Pacific Land Research Co.* (1977) 20 Cal.3d 10, stands for the proposition that "injunctive relief [is] mandatory to prevent future violations" of the UCL. Not so. The case stated that "[t]he purpose of injunctive relief is to prevent continued violations of law," not that an injunction is required under any particular circumstances. (*Id*. at p. 17.)

24

factfinder on those claims, the court was entitled to make credibility findings, and we defer to those findings. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 365.) And even if this finding was in error, EFD fails to explain why inclusion of the finding in the judgment warrants reversal. The only authority that EFD cites is *Horstmann v. Sheldon* (1962) 202 Cal.App.2d 184, which noted that statements in a memorandum decision "are not a part of the findings or judgment." (*Id*. at p. 189.) But that rule is irrelevant here, since EFD challenges a finding in the judgment itself.

EFD also argues that the judgment must be reversed based on the trial court's findings relating to defendants' unclean hands defense. This defense was resolved by the trial court, and was not presented to the jury. The court found that "EFD, Teran, Band Pro, Brooks, Bisel, and Amnon Band actively participated in a scheme to defraud financial lenders." But the court also found that EFD "purged its fraud" by paying of all loans to those lenders. It therefore concluded that EFD's claims were not barred by the unclean hands defense.

Ordinarily, we review a trial court's factual findings for substantial evidence. (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462.) EFD does not argue that the court's findings are unsupported by substantial evidence. Instead, it asserts that the findings warrant reversal because they contradict the jury's verdict, which, according to EFD, implies a finding that EFD did not engage in any fraud. In support of this claim, EFD cites the jury instructions on intentional misrepresentation, concealment, the statute of limitations, and agency. However, those instructions demonstrate only that the jury was asked to determine whether

25

EFD was harmed when Band Bro, Band, and Brooks concealed and intentionally misrepresented certain information. The instructions say nothing about financial lenders. EFD has not established that any finding implied by the judgment contradicts the trial court's finding that plaintiffs participated in fraud against lenders.

Even if the court's findings conflicted with the verdict, we would find no error. EFD asserts that the findings require reversal under *Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, which recognized that a court may not " 'grant equitable relief inconsistent with the jury's findings.' " (*Id*. at p. 159.) But the trial court did not grant relief that is inconsistent with any implied finding—rather, the court *rejected* the equitable defense of unclean hands that would have barred plaintiffs' recovery.

EFD similarly argues that the judgment should be reversed because the court's findings are inconsistent with its ultimate rejection of the unclean hands defense. We discern no inconsistency. The court found that EFD participated in fraud against financial lenders. It separately determined that EFD purged that fraud by paying the lenders in full, thus rendering the unclean hands defense inapplicable. It is difficult to imagine how the court could have assessed the latter question without first resolving the former—there was no reason for the court to consider whether EFD had purged any fraud unless the court had already found that it had engaged in fraud.

Finally, EFD asserts that the court was "not authorized" to make findings relating to the rejected unclean hands defense. We again disagree. A court must "issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any

26

party appearing at the trial." (§ 632.) EFD itself requested a statement of decision on the unclean hands defense, and the trial court was required to explain the factual basis for its ruling on that issue.

## VI. EFD has not established any basis for reversal of the GroundSeven default judgment

EFD also appeals from the default judgment as to GroundSeven and the order denying its motion for a new trial. EFD primarily argues that the court's damages award was inadequate. We again conclude that EFD has not identified any basis for reversal.

### A. *Legal framework and standard of review*

When a defendant fails to answer the complaint, the plaintiff may request a default judgment pursuant to section 585. "The court shall hear the evidence offered by the plaintiff, and shall render judgment in the plaintiff's favor for that relief, not exceeding the amount stated in the complaint . . . as appears by the evidence to be just." (§ 585, subd. (b).) The plaintiff need only make a prima facie showing of entitlement to damages. (*Johnson v. Stanhiser* (1999) 72 Cal.App.4th 357, 361 (*Johnson*).) Nonetheless, " '[p]laintiffs in a default judgment proceeding must prove they are entitled to the damages claimed.' " (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 288.)

The reviewing court may set aside a damages award following a default judgment only when the award is " 'so disproportionate to the evidence as to suggest that the verdict was the result of passion, prejudice or corruption [citations] or where the award is so out of proportion to the evidence that it

27

shocks the conscience of the appellate court.' " (*Johnson, supra,* 72 Cal.App.4th at p. 361.)

### B.    EFD has not established that the award as to GroundSeven was disproportionate to the evidence

In its request for a default judgment as to GroundSeven, EFD asked for $591,126.23 in damages plus $444,760.19 in prejudgment interest.  The court's statement of decision and judgment awarded EFD $49,481 in damages against GroundSeven and $41,847.37 in prejudgment interest.  The statement of decision did not provide any reasoning for this ruling.  However, in its order denying GroundSeven's motion for a new trial, the court found that Brooks was the sole owner and agent of GroundSeven.  It concluded that EFD had not established that Brooks or GroundSeven had caused any damages beyond those awarded by the jury, and therefore it limited the damages against GroundSeven to the amount that the jury allocated to Brooks.

EFD argues that the damages award was disproportionate to the evidence.  It contends that the court ignored evidence that Brooks participated in fraudulent transactions beyond those presented to the jury—namely, trial exhibits 603a and 603b.  These two exhibits are spreadsheets that list certain details, including Brooks's commission, for several invoices issued by Novation between 2012 and 2015.  Although the two exhibits do not mention GroundSeven, Brooks testified that GroundSeven "absorbed" Novation in 2014.  According to EFD and its expert Bussell, the two exhibits were produced by Brooks, and they establish that Novation received commissions from about 24 fraudulent transactions.  EFD asserts that GroundSeven should

28

be held liable for all damages described in exhibits 603a and 603b, and not just the damages that the jury allocated to Brooks.

This argument fails. Aside from its expert's declaration, EFD has not cited anything in the record to support its assertion that the two exhibits are "Brooks' own summary of transactions presented at the jury trial." The documents do not include any title or Bates number establishing their provenance. Although we have no obligation to do so, we have independently searched the reporter's transcript provided to this court, and we found no testimony discussing either exhibit number. (*Dills*, *supra*, 28 Cal.App.4th at p. 890, fn. 1 [appellate court will not develop appellant's arguments].)

EFD also asserts that GroundSeven should be held liable for all damages identified in the complaint because, by defaulting, it admitted all well-pleaded allegations therein— including the allegations that all defendants were joint tortfeasors who were jointly and severally liable for EFD's damages. This argument also fails. " '[A] defendant who fails to answer admits only facts that are well pleaded.' " (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 829.) Joint and several liability is a legal conclusion.[12] (Cf. *Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618, 628.) Conceivably, a complaint could include well-pleaded allegations such that a defaulting defendant might admit facts supporting his or her joint liability. But the operative complaint included no factual allegations about GroundSeven, meaning there were no facts for it to admit.

_____

[12] For example, as EFD acknowledges in its reply in the "R" appeal, "[t]he agency allegation at issue is a legal conclusion, not a factual admission."

According to the trial court, plaintiffs named GroundSeven as a Doe defendant on September 19, 2019. But the record on appeal does not include any filings from that date, meaning the record does not reflect what well-pleaded facts, if any, were alleged about GroundSeven's role.[13]

Next, EFD argues that the trial court ruling must be reversed if the court relied on Brooks's opposition to EFD's application for a default judgment as to GroundSeven. But the statement of decision did not mention Brooks's opposition, and EFD has not identified anything in the record to support its speculative argument that the court relied on it. We therefore reject this point as forfeited. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 [appellant's burden is to "provide adequate record citations" supporting arguments on appeal].)

Finally, in both appeals, EFD contends that the trial court erred by declining to offset the GroundSeven default judgment by the amount of the Bisel Settlement, and that any offset should be allocated pro rata among all defendants. We presume EFD intended for these arguments to depend on the success of its argument that the GroundSeven default judgment was inadequate. Otherwise, offsetting the default judgment would reduce the award against GroundSeven to zero. Because we affirm the GroundSeven default judgment, we decline to reach these contingent points.

---

[13]     In support of this point, EFD cites several cases discussing the treatment of joint and several liability for noneconomic damages. These cases are inapposite, because EFD only sought economic damages, i.e., " 'objectively verifiable monetary losses . . . .' " (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 600.)

## DISPOSITION

We affirm the judgment as to the Band Defendants and Brooks, the default judgment as to GroundSeven, and the order denying EFD's motion for a new trial.

Attorney David E. Azar is directed to pay $900 in sanctions, payable to the clerk of this court, no later than 30 days after the remittitur is filed. The clerk is directed to deposit this sum into the court's general fund.

Respondents shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HANASONO, J.

We concur:

EDMON, P. J.

ADAMS, J.

31